**Slip Op. 15-136**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| KYOCERA SOLAR, INC. AND KYOCERA MEXICANA S.A. DE C.V., <br><br>    Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br>    Defendant, <br><br> AND <br><br> SOLARWORLD AMERICAS, INC., <br><br>    Defendant-Intervenor. | Before: Nicholas Tsoucalas, <br>        Senior Judge <br><br> Court No. 15-00084 <br><br> **PUBLIC VERSION** |

**<u>OPINION</u>**

[Plaintiff's Motion for Judgment Upon the Agency Record is denied. The International Trade Commission's determination and decision are affirmed.]

Dated:December 7, 2015

<u>J. Kevin Horgan</u> and <u>Alexandra H. Salzman</u>, DeKieffer & Horgan, PLLC, of Washington, DC, for Plaintiff.

<u>Mary Jane Alves</u>, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for Defendant. With her on the brief were <u>Andrea C. Casson</u>, Assistant General Counsel for Litigation, and <u>Dominic L. Bianchi</u>, General Counsel.

<u>Timothy C. Brightbill</u>, <u>Laura El-Sabaawi</u>, <u>Usha Neelakantan</u>, Wiley Rein, LLP, of Washington DC, for Defendant-Intervenor.

**Tsoucalas, Senior Judge:**  This case comes before the Court upon Plaintiff's, Kyocera Solar Inc. ("KSI") and Kyocera Mexicana

S.A. DE C.V. ("KMX") (collectively "Kyocera"), Motion for Judgment upon the Agency Record challenging the International Trade Commission's ("ITC" or "Commission") decision in <u>Certain Crystalline Silicon Photovoltaic Products From China and Taiwan</u>, 80 Fed. Reg. 7,495 (ITC Feb. 10, 2015) ("<u>ITC Injury Determination</u>") and Certain Crystalline Silicon Photovoltaic Products from China and Taiwan, USITC Pub. 4519 Inv. Nos. 701-TA-511 and 731-TA-1246-1247 (Feb. 2015) ("<u>ITC Decision</u>"). Defendant ITC and Defendant-Intervenor Solarworld Americas Inc. ("Solarworld") oppose Plaintiff's motion. For the following reasons, the court denies the Plaintiff's motion and affirms the <u>ITC Injury Determination</u> and <u>ITC Decision</u>.

### BACKGROUND

Kyocera is a producer and supplier of solar energy modules. Mem. in Supp. Of Mot. for J. Upon the Agency R. ("Pl.'s Br.") at 2, July 13, 2015, ECF No. 23. Kyocera International ("KII") was established in 1969 as a holding company for Kyocera Corporation's North American group of companies. <u>Id.</u> KSI is KII's North American solar products subsidiary headquartered in Scottsdale, Arizona. <u>Id.</u>

KMX is a maquiladora manufacturing plant located in Tijuana, Mexico. <u>Id.</u> In 2004, KMX began producing solar modules

in Mexico for KSI. Id. In 2010, KMX began incorporating solar cells produced in Taiwan into some of the solar modules KMX produced in Mexico. Id. The Taiwanese solar cells were connected in Mexico to form solar modules. Id.

On December 31, 2013, Solarworld filed a petition alleging that certain crystalline silicon photovoltaic ("CSPV") products[1] imported from Taiwan were being dumped in the United States. Pl.'s Br. at 3. The petition also alleged that CSPV products imported from China were being dumped and unfairly subsidized. Id.

The Department of Commerce ("Commerce") initiated an antidumping investigation of CSPV products from Taiwan and China on January 29, 2014. Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China and Taiwan, 79 Fed. Reg. 4,661 (Dep't Commerce Jan. 29, 2014) (Initiation of Antidumping Duty Investigations). Commerce described the products subject to investigation in the following manner:

> The merchandise covered by these investigations is crystalline silicon photovoltaic cells, and modules, laminates and/or panels consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including building integrated materials. For purposes of these

---

[1] CSPV products include solar cells and modules.

>       investigations, subject merchandise also
>       includes modules, laminates and/or panels
>       assembled in the subject country consisting of
>       crystalline silicon photovoltaic cells that
>       are completed or partially manufactured within
>       a customs territory other than that subject
>       country, using ingots that are manufactured in
>       the subject country, wafers that are
>       manufactured in the subject country, or cells
>       where the manufacturing process begins in the
>       subject country and is completed in a non-
>       subject country . . . .
>
>       Also excluded from the scope of these
>       investigations are any products covered by the
>       existing antidumping and countervailing duty
>       orders on crystalline silicon photovoltaic
>       cells, whether or not assembled into modules,
>       from the People's Republic of China.

Id. at 4,667. The scope description included modules produced in Taiwan using cells produced elsewhere, but it did not include solar modules produced in non-subject countries such as Mexico. Id.

On September 15, 2014, Kyocera filed a request asking Commerce to exclude solar modules produced in Mexico. Request for Scope Determination Kyocera Conf. App. Attach. E, Sept. 15, 2014, ECF No. 28. Nevertheless, on December 23, 2014, Commerce decided to include solar modules produced in Mexico using Taiwanese cells within the scope of its investigation: "[m]odules, laminates, and panels produced in a third-country from cells produced in Taiwan are covered by this investigation." Certain Crystalline Silicon Photovoltaic Products From Taiwan, 79 Fed. Reg. 76,966, 76,968

(Dep't Commerce Dec. 23, 2014) (Final Determination of Sales at Less Than Fair Value).  Using this scope definition provided by Commerce, the ITC determined that an industry in the United States is materially injured by reason of imports of CSPV products from Taiwan.  ITC Injury Determination, 80 Fed. Reg. at 7,495.

Kyocera subsequently filed this action disputing the ITC's affirmative injury determination.  Compl. at ¶¶ 16-25, Mar. 20, 2015, ECF No. 6.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this action pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c) (2012), and Sections 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i) of the Tariff Act of 1930, 19 U.S.C. § 1516a(a)(2)(A)(i)(II) (2012),[2] 19 U.S.C. § 1516a(a)(2)(B)(i).

In an action challenging a final injury determination by the ITC, the Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence means "more than a mere scintilla" of "such relevant evidence as a reasonable mind might accept as

---

[2] Further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2012 edition, and all applicable amendments thereto, unless otherwise noted.

adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). To determine if substantial evidence exists, the court reviews the record as a whole. Id. at 488. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Id. The mere fact that it may be possible to draw two inconsistent conclusions from the record does not prevent the determination from being supported by substantial evidence. Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001); see also Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Under the first step of Chevron U.S.A. Inc. v. Nat. Res. Def. Council Inc., 467 U.S. 837, 842 (1984), when a court reviews an agency's construction of the statute which it administers, the first question is whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. Id. at 842-43. "To ascertain . . . Congress['] . . . intention . . . [the Court] employ[s] the 'traditional tools of statutory construction.'" Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998) (citing Chevron, 467 U.S. at 843

n.9.) "The first and foremost 'tool' . . . is the statute's text, giving it its plain meaning . . . [I]f the text answers the question, that is the end of the matter." Id. (citing VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1579 (Fed. Cir. 1990)). "Beyond the statute's text, those 'tools' include the statute's structure, canons of statutory construction, and legislative history." Id. If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. Chevron, 467 U.S. at 843. "'To survive judicial scrutiny, an agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation.'" Usinor v. United States, 26 CIT 767, 771 (2002) (not reported in F.Supp.2d) (citing Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994). "Thus, when faced with more than one reasonable statutory interpretation, 'a court must defer to an agency's reasonable interpretation . . . even if the court might have preferred another.'" U.S. Steel Grp. v. United States, 225 F.3d 1284, 1287 (Fed. Cir. 2000) (quoting NSK Ltd. v. United States, 115 F.3d 965, 973 (Fed. Cir. 1997)).

1. **Whether Commerce improperly used its authority to expand the geographic reach of the antidumping order.**

   Kyocera argues that Commerce improperly used its authority to expand the geographic reach of the antidumping order by defining the scope of merchandise covered to include modules produced in Mexico using Taiwanese cells.  Pl.'s Br. at 10. Kyocera maintains that Commerce could have conducted a circumvention inquiry under 19 U.S.C. § 1677j(b) and 19 C.F.R. § 351.225(h) (2015), and consulted with the ITC regarding the impact of a circumvention finding on the injury analysis. Id. The court declines to address this argument, because it is not properly before the court.  This case concerns the Commission's affirmative material injury determination regarding CSPV from Taiwan.  ITC Injury Determination, 80 Fed. Reg. at 7,495; ITC Decision. Commerce's determinations are the subject of separate litigation. Thus, the Court will not address Commerce's determinations here.

2. **The ITC's Negligibility Analysis**

   Under the statute, if the ITC determines that imports of the subject merchandise are negligible, its investigation into whether there is injury shall be terminated. 19 U.S.C. § 1673d(b)(1).  Imports from a country are considered negligible if such imports account for less than 3% of the volume of all such merchandise imported into the U.S. in the most recent twelve month

period for which data are available that precedes the filing of the petition or the initiation of the investigation.  Id. § 1677(24)(A)(i).  However, imports are not negligible if the aggregate volume of imports of the merchandise from all countries with respect to which investigations were initiated on the same day exceeds 7% of the volume of all such merchandise imported into the U.S. during the applicable twelve month period.  Id. § 1677(24)(A)(ii).

Kyocera argues that the ITC's injury determination was neither supported by substantial evidence nor in accordance with law, because imports of CSPV from Mexico were negligible.  Pl.'s Br. at 11. Kyocera appears to acknowledge that the statute centers the negligibility analysis on the imports of the subject merchandise with respect to which Commerce has made an affirmative determination. Id. at 15.  Kyocera maintains that Commerce made an affirmative determination with respect to solar products from Mexico when it deemed Mexican products to be subject merchandise. Id.

Kyocera points out that the definition of negligibility is not limited to countries named in the petition. Id. Additionally, Kyocera questions the Commission's deference to Commerce's scope determination:

> [a]llowing the Commission to wash its hands of the matter by deferring to the Commerce Department's unlawful scope determination creates a perfect Catch 22. If the petitioner had filed a dumping petition against solar products from Mexico as it could have done, the petition would have resulted in a negative injury finding . . . Likewise, if the petitioner had requested a circumvention inquiry with respect to KSI's solar products from Mexico, there would not have been a finding of circumvention because KSI had established its Mexican production facilities long before any antidumping cases were filed, and also because the Commission would have been asked to make an assessment of the [sic] whether such products were a cause of injury.

Id. at 15-16. Kyocera's argument is flawed. Kyocera ignores the fact that Commerce's investigation defines the scope of the ITC's analysis. 19 U.S.C. § 1673d (a)(1), (b)(1); See USEC Inc. v. United States, 34 Fed.Appx. 725, 730 (Fed. Cir. 2002) ("The merchandise that is subject to the ITC's analysis is the 'subject merchandise' as to which Commerce has initiated an antidumping investigation.") Congress' intent is clear in this regard. See Chevron, 467 U.S. at 842-43. Here, Commerce determined that "the solar modules produced by Kyocera in Mexico using Taiwanese cells are considered Taiwanese in origin, and are within the scope of this [Taiwanese] investigation." Certain Crystalline Silicon Photovoltaic Products from Taiwan: Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value, at

23, A-583-853,(Dec. 15, 2014). Thus, the ITC was bound by Commerce's determination and tasked with examining whether imports from Taiwan, including modules from Mexico, were negligible. See USEC, 34 Fed.Appx. at 730. Accordingly, the ITC correctly declined to conduct a separate negligibility analysis with Mexico as the country of origin.

According to data available for the most recent twelve month period prior to the filing of the petitions, subject imports of CSPV products from Taiwan were [[    ]]% of total CSPV imports and subject imports from China were [[    ]]% of total CSPV imports. Def.'s App. Prehearing Br. of Taiwan Photovoltaic Industry Association at Ex. 7, Dec. 1, 2014, ECF No. 41. Ostensibly, these figures exceed the 3% and 7% thresholds. 19 U.S.C. § 1677(24)(A)(i),(ii). Therefore, the Commission reasonably concluded that the imports were not negligible.

### 3. Conclusion

For the foregoing reasons, the court denies the Plaintiff's motion and affirms the ITC Injury Determination and ITC Decision. Judgment will enter accordingly.

                                            **/s/   Nicholas Tsoucalas**
                                            **Nicholas Tsoucalas**
                                            **Senior Judge**

**Dated:**   December 7, 2015
       **New York, New York**